UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
KRISTIN DiCROCE, Individually and on )
Behalf of all Persons Similarly Situated, )
 )
              Plaintiff, )
 )
v. )     **Civil Action No. 21-cv-11660-PBS**
 )
MCNEIL NUTRITIONALS, LLC, and )
JOHNSON & JOHNSON CONSUMER, INC., )
 )
             Defendants. )
_____ )

**PLAINTIFF'S FIRST AMENDED CLASS ACTION
COMPLAINT AND DEMAND FOR TRIAL BY JURY
[FILED PURSUANT TO THIS COURT'S APRIL 8, 2022 MEMORANDUM AND
ORDER – ECF NO. 42]**

Plaintiff Kristin DiCroce, by and through her counsel, on behalf of herself and all other

persons similarly situated nationwide (the "Class"), alleges the following facts and claims upon

personal knowledge as to matters relating to herself, and, upon information and belief, as to all

other matters based upon the investigation of counsel as follows:

**INTRODUCTION**

1.     Plaintiff Kristin DiCroce brings this class action against McNeil Nutritionals, LLC

("McNeil"), a subsidiary of Johnson & Johnson Consumer, Inc. ("J&J") (collectively

"Defendants"), for their so-called dietary supplement Lactaid products (the "Lactaid

Supplements" or "Supplements") that are unlawfully and misleadingly labeled and

advertised in violation of M.G.L. c. 93A and M.G.L. c. 266, § 91 as shown by their

failure to comply with the labeling requirements of the Food, Drug, and Cosmetic Act

of 1938 ("FDCA"), 21 U.S.C. §§ 301–399f, and U.S. Food and Drug Administration

("FDA") regulations and guidance.  (Defendants also sell lactose-free prepared food/dairy products under the brand name Lactaid, but those are not part of this action; only the Supplements are at issue in this lawsuit.)

2. Defendants unlawfully and misleadingly label and advertise the Lactaid Supplements in violation of M.G.L. c. 93A and M.G.L. c. 266, § 91 with claims that they prevent, treat, cure, or mitigate lactose intolerance and/or symptoms associated with being lactose intolerant (the "Disease Claims") that do not comport with the requirements of 21 U.S.C. § 343(r) and 21 C.F.R. § 101.14 and, therefore, the Lactaid Supplements cannot be lawfully manufactured, distributed, or sold to consumers.

3. The FDCA, and regulations promulgated thereunder, set standards that bar manufacturers and distributors like Defendants from selling misbranded and illegal products with misleading labels.

4. Under both federal and Massachusetts law, it is illegal to manufacture, deliver, or sell misbranded food, which includes dietary supplements. *See* 21 U.S.C. § 331; Massachusetts G.L. c. 94 § 190.

5. Because the manufacture and sale of the misleadingly labeled Lactaid Supplements violates the food labeling laws of Massachusetts, the actions of Defendants also constitute predicate acts under the consumer protection laws of Massachusetts, including, Massachusetts G.L. c. 93A *et seq*.

6. While there is no private right of action under federal law for Defendants' violations, federal law identifies which types of supplement claims are misleading which give rise to actions under state laws, such as in Massachusetts General Laws, Chapter 93A

and M.G.L. c. 266, § 91, and other states' substantially similar consumer protection statutes.

## PARTIES

7.   Plaintiff Kristin DiCroce is an individual residing in the town of East Falmouth, Barnstable County, Massachusetts.

8.   Defendant McNeil Nutritionals, LLC is a limited liability company organized under the laws of Delaware with a principal place of business at Fort Washington, PA. McNeil is a wholly owned subsidiary of Johnson & Johnson Consumer, Inc.

9.   Defendant Johnson & Johnson Consumer, Inc. is a corporation organized under the laws of Delaware with a principal place of business in New Brunswick, New Jersey. J&J is the parent company of its subsidiary McNeil.

## JURISDICTION AND VENUE

10.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because the amount in controversy for the Class exceeds $5 million and there is diversity between some Class members and the Defendants.

11.   Venue is proper here pursuant to 28 U.S.C. § 1391(a) because Defendants have transacted business here and a substantial part of the events or omissions giving rise to the claims in this lawsuit occurred here.

## SUBSTANTIVE FACTUAL ALLEGATIONS

12.   Dietary supplements are subject to the laws and regulations applicable to food.  Food manufacturers are required to comply with state and federal laws and regulations that govern the labeling of food products, including, without limitation, the FDCA and its labeling regulations, including those set forth in 21 C.F.R. § 101.

13.     The FDCA provides that a food is "misbranded," among other things, "if its labeling

is false or misleading in any particular" or if its label or labeling bears an

unauthorized "health claim", *i.e.,* a claim that expressly or impliedly characterizes the

relationship between a nutrient and a disease or health-related condition.  21 U.S.C. §

343(a)(1) & (r).  A "misbranded" food is misleading in violation of M.G.L. c. 93A.

14.     The FDCA prohibits all health claims on food labels or labeling, except those

expressly authorized by FDA regulation.  *Id*. § 343(r)(1)(B); *see also* 21 C.F.R. §

101.14(e)(1)–(2) ("[n]o expressed or implied health claim may be made on the label

or in labeling for a food, regardless of whether the food is in conventional food form

or dietary supplement form, unless: (1) The claim is specifically provided for in

subpart E of this part; and (2) The claim conforms to all general provisions of this

section as well as to all specific provisions in the appropriate section of subpart E of

this part …").

15.     The FDCA provides that a statement on a dietary supplement's label or labeling "may

not claim to diagnose, mitigate, treat, cure, or prevent a specific disease or class of

diseases."  21 U.S.C. § 343(r)(6).  Moreover, a food is misbranded, and thus

misleading, if it omits information that is material in light of the claims made for the

product or the consequences that may result from using the product, such as failing to

disclose known adverse effects or other information necessary for consumers to

safely use the product.  21 C.F.R. § 1.21(a).

16.     Pursuant to Massachusetts law, Massachusetts has expressly adopted the federal

labeling requirements and requires that all packaged food be labeled in compliance

with applicable law, including all labeling requirements contained in 21 C.F.R. Part

101 - Food Labeling.  105 CMR 590.001; 105 CMR 590.004(B).  Massachusetts requires this "to safeguard public health and provide to consumers food that is safe, unadulterated, and honestly presented."  105 CMR 590.001; 105 CMR 590.002. Massachusetts has also enacted a number of laws and regulations that parallel federal food laws and regulations and impose identical requirements.  *See*, for example, Massachusetts G.L. c. 94 § 187 (food, including dietary supplements, is misbranded if its label "is false and misleading in any particular"); 105 C.M.R. 500.004(B)(5), which incorporates many FDA regulations including 21 C.F.R. 101 (Food Labeling); and 105 C.M.R. 500.006, which further discusses food labeling and the federal regulations. In addition, c. 93A incorporates the FTC Act and contains language identical to that of § 5 (a)(1) of the FTC Act (15 U.S.C. § 45 [a][1] [1976]).  Thus, violating Massachusetts and federal food labeling laws results in the violation of c. 93A, giving rise to a private cause of action.

17.     Through its labeling and advertising, including on their website, Defendants misrepresent that the Lactaid Supplements are effective to diagnose, prevent, treat, cure, or mitigate, or provide a beneficial effect related to the disease of lactose intolerance and/or the characteristic symptoms associated with being lactose intolerant.  Specifically, Defendants make the following virtually identical Disease Claims for each of the Lactaid Supplements:

     a.     LACTAID Fast Act Chewables – (claims that it is "For the Prevention of ● Gas ● Bloating ● Diarrhea associated with digesting diary", that by taking this Supplement a consumer suffering from lactose intolerance can "Enjoy Dairy Again!", and by taking this Supplement "nothing can stop you from eating the foods you love.  Our delicious vanilla chewables should be taken with your first bite of dairy, so that milk doesn't mess with you"), *see* label attached hereto as Exhibit 1;

    b.    LACTAID Fast Act Caplets – (claims that it is "For the Prevention of ● Gas ● Bloating ● Diarrhea associated with digesting diary", that by taking this Supplement a consumer suffering from lactose intolerance can "Enjoy Dairy Again!", and "Don't let that annoying lactose get in the way of eating."  LACTAID Fast Act Caplets make dairy easier to digest so you can enjoy your favorite foods anytime, anywhere"), s*ee* label attached hereto as Exhibit 2; and

    c.    LACTAID Original Strength Caplets (claims that it is "For the Prevention of ● Gas ● Bloating ● Diarrhea associated with digesting diary", that by taking this Supplement a consumer suffering from lactose intolerance can "Enjoy Dairy Again!" and "Experience the Total Joy of Dairy", and that by taking this Supplement it will be "easier than ever to manage your lactose intolerance. Take up to three caplets with your first sip or bite of dairy to ensure that milk doesn't mess with you.  LACTAID Original Strength Caplets lets you enjoy dairy anytime, anywhere"), with label attached hereto as Exhibit 3.

18.    By claiming that the above Supplements are effective to diagnose, prevent, treat, cure, or mitigate the disease of lactose intolerance and/or the characteristic symptoms associated with being lactose intolerant, *i.e.,* gas, bloating, and diarrhea associated with digesting dairy, Defendants are holding the Supplements out as drugs.

19.    It is well established that lactose intolerance is a digestive disease, since, among other things, it can cause harm to a person's small intestine.  *See*, 21 CFR 101.93(f) (defining disease as "damage to … [the digestive] system of the body such that it does not function properly"); *see also* National Institute of Health, National Institute of Diabetes and Digestive and Kidney Diseases, https://www.niddk.nih.gov/health-information/digestive-diseases/lactose-intolerance (identifying lactose intolerance as a digestive disease) (last visited April 26, 2022), attached hereto as Exhibit 4.

20.    Per federal law, "if the label or labeling of a product marketed as a dietary supplement bears a disease claim … the product will be subject to regulation as a drug."  21 CFR 101.93(f).  So, regardless of their ingredients, the Lactaid

Supplements are subject to regulation as a drug because they claim to be a dietary supplement treating the disease of lactose intolerance.  That would still be the case if the Lactaid Supplements contained 100% water and fully disclosed its ingredient so long as it still claimed to treat a disease such as lactose intolerance.

21.   For example, Tums is a drug because it claims to treat the relatively mild disease of stomach upset, not because it contains calcium carbonate as an active ingredient.  In fact, the National Institute of Health defines calcium carbonate as "a dietary supplement."

https://medlineplus.gov/druginfo/meds/a601032.html#:~:text=Calcium%20carbonate%20is%20a%20dietary,acid%20indigestion%2C%20and%20upset%20stomach.

22.   Similarly, petrolatum, the active ingredient in lip balm, is a drug because it treats the relatively mild disease of chapped lips.  Thus, a lip balm consisting of 100% water would still be a drug because it claims to treat the disease of chapped lips.

23.   The labeling of the Lactaid Supplements with Disease Claims constitutes materially misleading labeling and marketing practices under Massachusetts and federal law because Defendants are labeling and marketing the Supplements as drugs, which the FDCA defines, in part, as any article "intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animal."  21 U.S.C. § 321(g)(1)(B).

24.   Unlike approved drugs, however, the Supplements have not received the requisite FDA approval certifying the Supplements as being safe and effective for their advertised purpose, and thus do not include the attendant "Drug Facts" information the FDA deems material to consumers.  This end-run around the FDCA's certification

requirement makes the Disease Claims illegal drug claims and the use of these claims to market and promote the Supplements amounts to "Health Fraud," as defined by the FDA is in violation of Massachusetts and federal law.

25. Accordingly, representations by Defendants that the Lactaid Supplements are effective to diagnose, prevent, treat, cure, or mitigate the disease of lactose intolerance and/or the symptoms associated with being lactose intolerant are per se disease claims. *See*, *inter alia*, FDA, Guidance for Industry, available at: https://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInfor mation/ucm103340.htm.

26. DiCroce purchased the Lactaid Supplements near her home in Massachusetts on multiple occasions within the past four years based on the misleading label statements described herein, including, without limitation, the Disease Claims appearing on the Lactaid Supplements' label and/or Defendants' representation that the products treated the symptoms associated with the disease of lactose intolerance.

27. The Lactaid Supplements claim both to be a "dietary supplement" and to treat the disease of lactose intolerance, but that disease claim makes the Lactaid Supplements drugs (not dietary supplements) under the governing FDA regulation – 21 CFR Section 101.93. Therefore, the Lactaid Supplements are misleadingly labeled as "dietary supplements."

28. While the Lactaid Supplements' label statement that "These statements [*i.e.*, the Disease Claims] have not been evaluated by the Food & Drug Administration," is literally true, it is nevertheless materially misleading because it implies that FDA evaluation and/or approval is not required, which is false because FDA evaluation

and approval as a drug is required for any product making disease claims, such as the

Lactaid Supplements and this misleading statements give rise to a violation of c. 93A.

29.     The Lactaid Supplements' label states "This product is not intended to diagnose, treat,

cure or prevent any disease," which is also materially misleading and a violation of

Massachusetts law because the label also states it is intended to treat the symptoms of

lactose intolerance, which is a disease.

30.     Had the Lactaid Supplements been labeled in compliance with applicable state and

federal law, the Disease Claims would not have appeared on the products, and

DiCroce would not have been misled by these claims on the Supplements' label.

31.     Specifically, Plaintiff would have been able to compare the Lactaid Supplements to

other lactose supplements that did not make illegal disease claims and see that those

other lactose supplements were less expensive for treating lactose intolerance as the

Lactaid Supplements' labels claim (*see, e.g.,* https://www.verywellhealth.com/the-

benefits-of-lactase-supplements-89470, citing studies showing lactase supplements

provide only partial benefit to most consumers, with 17% experiencing no benefit at

all, and only 22% fully benefitting, which is not disclosed on the Lactaid

Supplements' labels).  This ineffectiveness is because other types of digestive

intolerance (other than lactose intolerance) are also frequently related to the difficult-

to-digest proteins and fats inherent in dairy products, not just the absence of lactase,

which is an inconvenient fact that the Lactaid Supplements' label ignores.

32.     The FDA has not determined whether the Lactaid Supplements are effective and/or

safe for the treatment of the disease of lactose intolerance, even though such

determination is required by any product/drug making disease claims.  Irrespective of

what the Lactaid Supplements' label claims, it would not be effective or safe for a consumer to take the Lactaid Supplements if his/her intolerance was not due to absence of lactose.  This type of misinformed self-diagnosis and treatment is precisely what the FDA prohibits.

33.     Had the Lactaid Supplements been properly labeled , Plaintiff's purchasing decisions would have been different.  She would either (a) not have purchased the Lactaid Supplements at all or (b) only been willing to pay a lower price reflecting the Lactaid Supplements' true value as supplements of limited effectiveness in digesting dairy products.  For example, on Amazon.com, certain of the Lactaid Supplements with their illegal disease claims sell for $0.20 per pill while similar lactase supplements without disease claims sell for $0.09 per pill or less.  Thus, because of Defendants' mislabeling of the Lactaid Supplements, Plaintiff paid an unwarranted premium for the Lactaid Supplements she purchased over cheaper alternative products that were not illegal and/or misbranded.

34.     To summarize, the Lactaid Supplements' label falsely claim to be dietary supplements effective for treating the disease of lactose intolerance that do not require FDA approval.  The truth is that the Lactaid Supplements are unapproved drugs that are only marginally effective for treating lactose intolerance and require FDA approval.  Based at least in part on this mislabeling, the Lactaid Supplements sell for $0.20 per dosage on Amazon.com.  If the Lactaid Supplements were labeled truthfully (*i.e.*, without claiming to be effective for treating the disease of lactose intolerance), they would no longer be able to command such a high price.  For example, Puritan's Pride ($0.08 per dosage) and the Vitamin Shoppe ($0.09 per

dosage) sell lactase supplements without making illegal disease claims for a significantly lower price than the Lactaid Supplements.

35.     On July 21, 2021, more than thirty days prior to the filing of this action, a written demand for relief under M.G.L. c. 93A based on the misleading labeling, identifying Plaintiff and the Class and reasonably describing the unfair or deceptive acts or practices relied upon and the injury suffered by Plaintiff and the Class, was mailed and delivered to Defendants. Defendants failed to respond to this demand in any reasonable manner.

36.     Defendants, upon information and belief, knew: (1) the Lactaid Supplements make illegal disease claims by claiming to treat the disease of lactose intolerance; (2) those disease claims make the Lactaid Supplements a drug and not a dietary supplement; (3) the Lactaid Supplements have not gone through the required drug approval process, 21 CFR Part 314, *et seq*., and therefore have not been approved by the FDA for the treatment of lactose intolerance; and (4) the Lactaid Supplements misrepresent on their label that FDA approval is not required when in fact it is.

37.     In addition, Plaintiff's c. 93A demand letter referenced in paragraph 35 referenced an earlier demand letter served on Defendants making similar claims.  Plaintiffs c. 93A demand letter stated, among other things, that Defendants have "been on notice that the Supplements make illegal disease claims at least since it received a similar … demand letter in or around July 2019.  Since then, however, McNeill has failed to cure this labeling defect."

38.     As a result of Defendants' unlawful misrepresentations, Plaintiff and millions of other consumers in Massachusetts and throughout the United States purchased the misleading and misbranded Lactaid Supplements.

39.     Plaintiff and millions of other consumers in Massachusetts and throughout the United States who purchased misbranded Lactaid Supplements suffered economic harm and injury as a result of Defendants' actions identified herein.

40.     Plaintiff and other purchasers of misbranded Lactaid Supplements paid a premium for these products over cheaper alternative products that were not illegal and/or misbranded and/or would not have purchased the mislabeled supplements at all had they been truthfully labeled.

41.     Plaintiff and other purchasers of misbranded Lactaid Supplements paid money for products that were of a lesser value than represented by Defendants and/or would not have purchased the mislabeled supplements at all had they been truthfully labeled.

42.     These misrepresentations and acts give rise to private rights of action under state common law, as well as M.G.L. c. 93A and other similar state consumer protection statutes.

### THE DISCOVERY RULE/FRAUDULENT CONCEALMENT

43.     By prominently displaying the Disease Claims on its labels and website, Defendants created the misleading impression that the Disease Claims met all the regulatory requirements.

44.      Plaintiff was unable to discover earlier that Defendants' Disease Claims were fraudulent and a violation of federal and state laws because she had no reason to

believe Defendants were not complying with all its legal and regulatory requirements and legal duties.

## CLASS ACTION ALLEGATIONS

45.     Plaintiff brings this suit as a class action on behalf of herself and on behalf of other similarly situated persons pursuant to Fed. Civ. P. Rule 23 and Mass. Gen. Laws c. 93A for the 93A claim and states with substantially similar consumer protection acts, as well as her common law claims. Subject to additional information obtained through further investigation and/or discovery, the foregoing definition of the Class may be expanded or narrowed. The proposed Class is defined as follows:

> **Class:**  Plaintiff seeks to represent a nationwide class of all persons who purchased the Lactaid Supplements and are from states with laws substantially similar to Massachusetts law for a consumer protection, unjust enrichment and false advertising..

46.     Excluded from the Class are: (1) Defendants, Defendants' subsidiaries, affiliates, officers, directors, assigns and successors, and any entity which the Defendants have a controlling interest; (2) the Judge to whom this case is assigned and any member of the Judge's immediate family; (3) anyone who purchased Defendants' Lactaid Supplements for the purpose of resale; and (4) anyone asserting claims for personal injury.  Plaintiff reserves the right to modify the Class as further investigation and/or discovery warrant.

47.     This action has been brought and may properly be maintained as a class action pursuant to Federal Rule of Civil Procedure 23 and case law thereunder.

48.     **Numerosity**: The members of the Class are so numerous that joinder of all members

is impracticable.  Plaintiff reasonably believes that the Class is comprised of

thousands of consumers throughout the United States.  In *Daley v. McNeil Consumer*

*Products Co.*, 164 F.Supp.2d 367, 374 (S.D.N.Y. 2001), the court recognized that

"McNeil has sold over 600 million caplets of Lactaid" (citing "Temple Aff. at ¶

7").  Those numbers have only increased over the past twenty-one years.

49.     **Commonality**: Common questions of law and fact exist as to all members of the

Class and any State Subclasses.  These common questions predominate over any

questions affecting only individual Class members.  The common legal and factual

questions include, but are not limited to, the following:

   a.     Whether Defendants make misleading Disease Claims in violation of
          federal law;

   b.     Whether any violations of federal law are in turn violations of the relevant
          states' laws;

   c.     Whether the Lactaid Supplements as actually provided, *i.e.*, without FDA
          approval of the Disease Claims, were of less value than the Lactaid
          Supplements as represented with the Disease Claims;

   d.     Whether Class members are entitled to money damages equal to the
          difference in price between the Lactaid Supplements as mislabeled and the
          price if the Lactaid Supplements had been accurately labeled, as required
          by, *e.g., **Aspinall v. Philip Morris Companies**, **442 Mass. 381 (2004)***; and

   e.     Whether equitable relief is also appropriate to prevent the continuation of
          the alleged wrongdoing.

50.     In making the illegal Disease Claims, Defendants have acted or refused to act on

grounds that apply generally to the Class so that final injunctive relief or

corresponding declaratory relief is appropriate respecting the Class as a whole.

51.     **Typicality**: Plaintiff's claims are typical of those of the other members of the Class
because they all purchased the Lactaid Supplements making Disease Claims so the
harm sustained by Plaintiff and all of the members of the Class arises from and was
caused by the same course of conduct in which Defendants engaged.

52.     **Adequacy**: Plaintiff's claims are made in a representative capacity on behalf of the
other members of the Class.  Plaintiff has no interests antagonistic to the interests of
the other members of the proposed Class and is subject to no unique defenses.

53.     Plaintiff is similarly situated in interest to all members of the proposed Class and is
committed to the vigorous prosecution of this action and has retained competent
counsel experienced in consumer class actions.  Accordingly, Plaintiff is an adequate
representative of the proposed Class and will fairly and adequately protect the
interests of the Class.

54.     This suit may be maintained as a class action under Fed. Civ. P. Rule 23 (b) because
there are questions of law or fact that are common to the members of the Class that
predominate over any questions affecting only individual members and a class action
is superior to other available methods for the fair and efficient adjudication of the
controversy.  The injury suffered by each individual class member is relatively small
in comparison to the burden and expense of individual prosecution of the complex
and extensive litigation necessitated by the Defendants' conduct.  It would be
virtually impossible for members of the Class individually to effectively redress the
wrongs done to them.  Even if the members of the Class could afford such litigation,
the court system could not individualize litigation inasmuch as it presents a potential
for inconsistent or contradictory judgments.  Individualized litigation increases the

delay and expense to all parties, and to the court system when presented by complex legal and factual issues such as those in this case.  By contrast, the class action device presents no management difficulties, and provides the benefits of single adjudication, economy of scale and comprehensive supervision by a single court.

55.     In addition, the M.G.L. Chapter 93A claim should be certified under Chapter 93A, § 9(2) for all Chapter 93A claims (and similar sections for other states with a substantially similar provision) because Defendants have caused similar injury to numerous other persons similarly situated and Plaintiff will adequately and fairly represent such other persons.

### COUNT I

### Violations of the Massachusetts Consumer Protection Act
### (M.G.L. c. 93A, § 1, *et seq.*) And Other States Consumer Protection Statutes

56.     Plaintiff incorporates herein the allegations contained in the preceding paragraphs as if fully set forth herein.

57.     Plaintiff brings this claim on behalf of herself and all members of the Class.

58.     More than 30 days prior to filing this complaint, a proper demand for relief was made on Defendants under M.G.L. c. 93A on behalf of Plaintiff and the Class.

59.     Defendants did not make a reasonable offer of settlement to either Plaintiff or the Class.

60.     Defendants' acts and practices as set forth herein constitute unfair methods of competition and unfair and deceptive practices in the conduct of its business in violation of M.G.L. c. 93A, §§ 2 and 9, and other states' substantially similar consumer protection statutes.

61.     These violations of M.G.L. c. 93A and other state consumer protection statutes
include, without limitation, Defendants' marketing and selling the mislabeled Lactaid
Supplements containing the illegal Disease Claims described herein.

62.     Defendants' violations of M.G.L. c. 93A and other substantially similar state
consumer protection statutes were willful and knowing.

63.     Defendants' use or employment of the unfair or deceptive acts or practices described
herein (a) have caused similar injury to numerous other persons similarly situated and
(b) Plaintiff will adequately and fairly represents such other persons.

64.     Plaintiff and the Class have suffered damages as a result of Defendants' unfair or
deceptive acts, and are entitled to equitable relief, the greater of treble damages **based
on the benefit of the bargain they were falsely promised and denied** or statutory
damages of $25 per violation in Massachusetts (and other amounts in other states),
attorneys' fees and costs per state law.

65.     Plaintiff requests that this Court enjoin Defendants from continuing to engage in the
unlawful and deceptive practices and acts alleged above, pursuant, *inter alia*, to
M.G.L. c. 93A, § 6, along with appropriate court costs and attorneys' fees pursuant to
Chapter 93A and other substantially similar state consumer protection statutes.  If
Defendants are not permanently enjoined from continuing to engage in such
violations of the Chapter 93A, future consumers will be damaged by Defendants' acts
and practices in the same way as have Plaintiff and the putative Class.

## COUNT II

### Unjust Enrichment

66.     Plaintiff incorporates herein the allegations contained in the preceding paragraphs as
if fully set forth herein.

67. Plaintiff brings this claim on behalf of herself and all members of the Class.

68. Plaintiff and Class members conferred a tangible economic benefit upon Defendants by purchasing Defendants' Lactaid Supplements **at a premium above what they would have paid if they had known the Lactaid Supplements were actually ineffective, unapproved drugs**.  Plaintiff and Class members would have expected remuneration from Defendants at the time this benefit was conferred had they known that the Lactaid Supplements were marketed and sold as misbranded products containing illegal Disease Claims.

69. As a direct and proximate result of Defendants' misconduct as set forth above, Defendants have been unjustly enriched at the expense of Plaintiff and Class members.

70. It would be inequitable for Defendants to retain the profits, benefits and other compensation obtained by its wrongful conduct in marketing and selling the Lactaid Supplements that are misbranded.

## COUNT III

## <u>False Advertising in Violation of Mass. Gen. Laws c. 266, § 91</u>

71. Plaintiff incorporates herein the allegations contained in the preceding paragraphs as if fully set forth herein.

72. Plaintiff brings this claim on behalf of herself and all members of the Class.

73. Defendants used advertising on the packaging of the Lactaid Supplements at issue in this lawsuit to sell said products, and other advertising of the products, including, without limitation, the section of its website for the Lactaid Supplements.

74. Defendants are disseminating advertisements about the Lactaid Supplements that by its nature are deceptive or misleading within the meaning of M.G.L. c. 266, § 91.

75.     Defendants' Lactaid Supplements are misbranded by making illegal Disease Claims on the products' label and other advertising of the products, including, without limitation, through its website.

76.     The advertising statements on the labeling of the Lactaid Supplements described herein are misleading and likely to deceive Class Members and the general public.

77.     Defendants knew or should have known that the statements they made and disseminated on the Supplements' packaging and labels, Defendants' website and other marketing materials for the Lactaid Supplements were deceptive and/or misleading by the inclusion of the illegal Disease Claims described herein in violation of M.G.L. c. 266, § 91, in said advertising.

78.     Plaintiff seeks an Order of this court enjoining Defendants from continuing to violate the Massachusetts false advertising law or violating it in the same fashion in the future as discussed herein, and a declaration that the Supplements' labels are in violation of M.G.L. c. 266, § 91.

## <u>PRAYERS FOR RELIEF</u>

**WHEREFORE,** Plaintiff, on behalf of herself and all members of the Class defined herein, by the undersigned attorney, prays for judgment as follows:

(i)     Certification of a nationwide Class and appointment of Plaintiff as representative of the Class and her legal counsel as Class legal counsel;

(ii)    Grant judgment for Plaintiff and against Defendants on all Counts;

(iii)   Award Plaintiff multiple damages, attorneys' fees and costs pursuant to M.G.L. c. 93A § 9, and other state consumer protection statutes;

(iv)    A declaration that the Defendants' labels for the Lactaid Supplements at issue in this lawsuit containing the false and misleading statements described herein are in violation of Massachusetts law and federal regulations as specified in this Complaint;

(v)     An Order enjoining Defendant from selling its Lactaid Supplements at issue in this lawsuit in the Commonwealth of Massachusetts and

19

throughout the United States with labels and other advertising containing the false and misleading statements that are in violation of Massachusetts law and federal regulations as specified in this Complaint;

(vi)     Restitution of all money paid to Defendants by Plaintiff and the Class, as a result of the wrongs alleged herein in an amount to be determined at trial;

(vii)    Disgorgement of the ill-gotten gains derived by Defendants from their misconduct described herein;

(viii)   Award Plaintiff her costs and disbursements incurred in maintaining this action, including reasonable attorneys' and experts' fees and other expenses, and pre-and post-judgment interest; and

(ix)     Any other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all counts so triable.

Plaintiff Kristin DiCroce,

By her attorneys,

**ADKINS, KELSTON & ZAVEZ, P.C.**,

Dated: May 6, 2022                        */s/ Brendan Bridgeland*
John Peter Zavez, BBO # 555721
Noah Rosmarin, BBO #630632
Brendan Bridgeland, #648312
90 Canal Street, Suite 100
Boston, MA 02114
Phone (617) 367-1040
jzavez@akzlaw.com
nrosmarin@akzlaw.com
bbridgeland@akzlaw.com

## CERTIFICATE OF SERVICE

I certify that this document filed through the CM/ECF system will be sent electronically to registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 6, 2022.

/s/ *Brendan Bridgeland*
Brendan Bridgeland